## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                         )
RAYMOND C. PULLIAM,                      )
                                         )
              Plaintiff,                  )
                                         )
       v.                                 )        Civil Action No. 15-1405 (ABJ)
                                         )
UNITED STATES ENVIRONMENTAL              )
PROTECTION AGENCY, *et al.*,              )
                                         )
              Defendants.                 )
_____  )

## <u>MEMORANDUM OPINION</u>

Plaintiff Raymond Pulliam sent Freedom of Information Act ("FOIA") requests to defendants Environmental Protection Agency ("EPA"), United States Department of Defense ("DOD"), and United States Department of Justice ("DOJ") seeking records related to an investigation into toxic contamination occurring at former Army base Fort McClellan. Compl. ¶¶ 13, 27, 40 [Dkt. # 1]. Plaintiff's requests to DOJ and EPA were identical, while plaintiff's request to DOD sought different information.

EPA and DOD did not respond to plaintiff's FOIA requests within the statutorily-required twenty-day period, Compl. ¶¶ 26, 39; *see* 5 U.S.C. § 552(a)(6)(A), and DOJ failed to make a final determination on plaintiff's FOIA administrative appeal within the time required. Compl. ¶¶ 42–45; *see* 5 U.S.C. §§ 552(a)(6)(A)(ii), (a)(6)(C)(i). Plaintiff filed this lawsuit on August 28, 2015 after exhausting the administrative process. *See* Compl. All defendants responded to the suit. Answer [Dkt. # 6]. EPA and DOJ maintained that they had performed adequate searches for responsive materials and that no records were located. *See* Defs.' Status Reports [Dkt. ## 8–9]. However, DOD determined that its search was not adequate, *see* Defs.' Status Report [Dkt. # 8],

and it conducted another search that resulted in the production of fifty-seven pages to plaintiff. *See* Defs.' Statement of Undisputed Material Facts [Dkt. # 11-2] ("Defs.' SOF") ¶ 10; Decl. of Mark H. Herrington [Dkt. # 11-3] ("Herrington Decl.") ¶ 6; *see* Pl.'s Statement of Material Facts to Which There is No Genuine Issue, & Resp. to Defs.' SOF [Dkt. # 15-1] ("Pl.'s SOF") ¶ 7.

On May 12, 2016, defendants jointly filed a motion for summary judgment contending that each agency's search was adequate, and that DOD's redactions under Exemption (b)(6) were proper. Defs.' Mot. for Summ. J. [Dkt. # 11] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 11-1] ("Defs.' Mem.") at 5–14. Plaintiff filed a cross-motion for summary judgment on June 13, 2016, in which he also opposed defendants' motion, arguing that each agency's search was inadequate. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 15] ("Pl.'s Cross-Mot."); Mem. in Opp. to Defs.' Mot. and in Supp. of Pl.'s Mot. [Dkt. # 16] ("Pl.'s Cross-Mem.") at 6–13. Defendants filed a reply in support of their motion for summary judgment, and in opposition to plaintiff's cross-motion for summary judgment, on July 11, 2016. Defs.' Reply in Supp. of Defs.' Mot. & in Opp. to Pl.'s Cross-Mot. [Dkt. # 17] ("Defs.' Cross-Opp."). Then, on August 3, 2016, plaintiff filed his reply in support of his cross-motion for summary judgment. Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 20] ("Pl.'s Cross-Reply").

Because the Court finds that each agency has failed to establish that it conducted an adequate search for records under FOIA, it will deny defendants' motion in part, remand the matter to the agencies, and deny plaintiff's motion as moot. However, because the redaction of information from the pages produced by DOD was justified under a FOIA exemption, and DOD produced all segregable information, the Court will grant defendants' motion in part.

## BACKGROUND

### I.  The DOD Request

On December 13, 2014, plaintiff submitted a FOIA request to the DOD Office of the Secretary of Defense/Joint Staff FOIA Office.  Defs.' SOF ¶ 1; Pl.'s SOF ¶ 7; Decl. of Raymond Pulliam [Dkt. # 15-2] ("Pulliam Decl.") ¶ 6.  Plaintiff requested the following information:

> All correspondence whether in electronic or handwritten format, including but not limited to electronic mail (email), memorandums, or other documents related to H.R. 411 (Fort McClellan Health Registry Act), H.R. 2052 (For McClellan Health Registry Act), Fort McClellan exposures, Fort McClellan toxic contamination, H.R. 4816 (Toxic Exposure Research and Military Family Support Act of 2014), and / or H.R. 5680 (Veterans' Toxic Wounds Research Act of 2014).

Ex. A to Pulliam Decl.; Defs.' SOF ¶ 1; Pl.'s SOF ¶ 7.  The date range for the record search was May 1, 2013 through December 12, 2014.  Ex. A to Pulliam Decl.; Defs.' SOF ¶ 1; Pl.'s SOF ¶ 7.

On January 12, 2015, after being informed that his request was too broad, plaintiff narrowed his request to "[a]ll correspondence to, from or carbon copied (CC)" to Elizabeth King and Mary McVeigh.  Ex. B to Pulliam Decl.; Defs.' SOF ¶¶ 2–3; Pl.'s SOF ¶ 7.  Defendants interpret the narrowed request as calling only for the emails of those two individuals, Defs.' SOF ¶ 9, but plaintiff maintains that DOD was still obliged to search for all correspondence "whether in electronic or handwritten format, including but not limited to electronic mail (email), memorandums, or other documents" related to the topics mentioned above.  Pl.'s SOF ¶ 2; Ex. B to Pulliam Decl.  Ultimately, DOD provided fifty-seven responsive pages to plaintiff, which had been redacted for information related to junior personnel.  Defs.' SOF ¶¶ 8, 10–11, 13; Pl.'s SOF ¶ 7.

## II.     The EPA Request

On February 25, 2015, plaintiff submitted a FOIA request through EPA's online FOIA portal, and the request was assigned to EPA Region 4.  Defs.' SOF ¶ 16; Pl.'s SOF ¶ 8; Decl. of Scott Levine [Dkt. # 11-7] ("Levine Decl.") ¶ 4.  Plaintiff sought the following information:

> All documentation related to investigation/complaint filed by Heather White, General Counsel Environmental Working Group on June 26, 2003; VIA FACSIMILE & FIRST CLASS MAIL and addressed to: Glenn A. Fine, US Department of Justice, Office of the Inspector General and Nikki L. Tinsley, US Environmental Protection Agency Office of the Inspector General regarding allegations against: Christine Todd Whitman, Administrator of the EPA and William A. Weinischke, Department of Justice Senior Counsel.

EPA Ex. A to Defs.' Mot. [Dkt. # 11-8]; Defs.' SOF ¶ 16; Pl.'s SOF ¶ 8.  Plaintiff also included the June 26, 2003 letter from Heather White referenced in the request.  Defs.' SOF ¶ 17; *see* EPA Ex. B to Defs.' Mot. [Dkt. # 11-8].  The request was ultimately transferred to the EPA Office of Inspector General ("OIG") on March 18, 2015.  Defs.' SOF ¶¶ 18–19.  Due to a backlog of FOIA requests, the OIG was only able to provide plaintiff with a status update before plaintiff filed suit. Defs.' SOF ¶¶ 20–21.

## III.    The DOJ Request

Also on February 25, 2015, plaintiff sent the same FOIA request to the Office of Inspector General at the Department of Justice ("DOJ OIG") that it submitted to EPA.[1]  DOJ OIG responded to plaintiff's request by letter dated March 3, 2015 and informed plaintiff that no responsive documents had been located.  Defs.' SOF ¶ 35.

---

1      Plaintiff disputes the manner in which defendants describe the scope of the request in their statement of facts.  *See* Defs.' SOF ¶ 31; Pl.'s SOF ¶¶ 5, 9; Decl. of Jeanetta M. Howard [Dkt. # 11-5] ("Howard Decl.") ¶ 5; *see also* DOJ Ex. to Defs.' Mot. [Dkt. # 11-6] at 1.  Defendants describe the request by reiterating the request's first paragraph, but plaintiff maintains that the request is broader and also includes the subject matter contained within Heather White's letter.  *See* Defs.' SOF ¶ 31; Pl.'s SOF ¶¶ 5, 9.

**STANDARD OF REVIEW**

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. Dep't of Justice* 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal

quotation marks omitted).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006).  However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request.  Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a

balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonable segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## I.    Legal Standard for an Adequate Search

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151 and *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an

agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Id.* (finding summary judgment improper where agency's affidavit lacked sufficient detail); *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (same). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) ("The affidavit must explain the scope and method of the agency's search in a non-conclusory fashion.") (internal quotation marks omitted).

"Agency affidavits are accorded a presumption of good faith," *Safecard Servs., Inc.*, 926 F.2d at 1200, which can be rebutted with "evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738, or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326, citing

*Founding Church of Scientology*, 610 F.2d at 837; *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

While defendant agencies have submitted declarations in an attempt to meet their burden with regard to the adequacy of the searches, these declarations do not inspire confidence that the agencies have conducted searches reasonably calculated to uncover all relevant documents.  As will be set out in more detail below, the declarations make conclusory statements that the searches were adequate and fail to provide the details needed to enable the Court to determine if this was in fact the case.  Therefore, the Court will remand the case back to the agencies.

## II.     The DOD Request

### A.      The DOD Search

To support its contention that it conducted an adequate search, DOD offered the declaration of Mark H. Herrington, the Associate Deputy General Counsel in the agency's Office of General Counsel ("OGC"), who is currently supervising this FOIA case.  *See* Herrington Decl. ¶¶ 1–2. Herrington states that after plaintiff was informed that his original request was too broad, he limited the request to correspondence on the same subject matter "to, from, or cc'd to Elizabeth King or Mary McVeigh."  *Id.* ¶ 4.  DOD responded on November 2, 2015, and stated that the offices of the Under Secretary of Defense for Acquisition, Technology, and Logistics and the Office of the Assistant Secretary of Defense for Legislative Affairs had conducted searches but had not located any responsive materials.  *Id.* ¶ 5.  Herrington determined that the initial search was insufficient, and he decided to conduct a new search.  *See id.*

Herrington asked the DOD Enterprise IT Services Directorate ("EITSD") to search the emails of the two individuals named by plaintiff, within the date range of May 1, 2013 and

December 12, 2014.  Herrington Decl. ¶ 6.  He explained that he asked EITSD to conduct the search because EITSD "controls, stores, and can access the emails of . . . personnel in the office of Legislative Affairs, where the two individuals were employed."  *Id.*  Herrington directed EITSD to use the following search terms: "McClellan, H.R. 4011, H.R. 5680, H.R. 4816, H.R. 2052, Toxic Exposure Research, Toxic Wounds Research, and Toxic Contamination."  *Id.*  As a result of this search, 57 responsive pages were provided to plaintiff on March 10, 2016.  *Id.*

   **B.       The DOD Search was Inadequate**

   While the search undertaken at Herrington's direction was necessary and productive, it was incomplete since it covered electronic mail only.  Plaintiff's request, and DOD's own recitation of the request in its final decision letter, included all correspondence "whether in electronic or handwritten format, including but not limited to electronic mail, memorandums, or other documents."  Ex. B to Pulliam Decl.; DOD Ex. to Defs.' Mem. [Dkt. # 14].

   Defendants argue now that the use of the terms "to, from, or carbon copied" strongly indicates that plaintiff only sought email communications.  Defs.' Cross-Opp. at 6; Second Decl. of Mark H. Herrington [Dkt. # 17-1] ("Second Herrington Decl.") ¶ 5.  But "[t]he agency [is] bound to read [the request] as drafted, not as [] agency officials . . . might wish it was drafted."  *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).

   Although DOD contends that "limiting the search to emails was a reasonable calculation for an efficient search," Defs.' Cross-Opp. at 6, it is "unreasonable for [an agency] to ignore [] clear instructions conveying the intended scope of a FOIA request, at least insofar as those instructions were contained within the four corners of the request itself."  *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 931 F. Supp. 2d 77, 102 (D.D.C. 2013).  This Circuit has disapproved of agencies narrowing the scope of a FOIA request to exclude materials reasonably within the

description provided by the requester.  *See, e.g.*, *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (concluding that the agency's interpretation of the request "reads the just-quoted phrase out of the letter" in a manner that renders the agency's interpretation "simply implausible"); *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F. 3d 885, 889–90, 892 (D.C. Cir. 1995) (finding the agency's search for records under Perot's name was too narrow when the search also sought information "pertaining to" Perot); *Charles v. Office of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 215–16 (D.D.C. 2010) (finding unreasonable the agency's decision to interpret request for "autopsy reports 'commenting on, discussing or indicating' fatal bullet wounds" to include only "documents containing explicit 'statements' about these topics").

Here, nothing in plaintiff's "narrowed request suggests any intent to restrict the scope of his request" to email only.[2]  *See Charles*, 730 F. Supp. 2d at 216.  The request contained clear instructions to search for other types of documents, *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 102, and the agency had an obligation "to construe [the] FOIA request liberally."  *Nation Magazine*, 71 F.3d at 890.  At the very least, the record leaves substantial doubt as to the sufficiency of the search in that certain materials may have been overlooked despite plaintiff's well-defined request.  *See Valencia-Lucena*, 180 F.3d at 326.

---

2       In his second declaration, Herrington acknowledges that plaintiff's narrowed request does list "'handwritten format' as being within the scope," but claims that "there is no indication that such documents exist, and a search of hard copy records would most likely be time consuming but futile."  Second Herrington Decl. ¶ 5.  Although an agency "is not required to expend its limited resources on searches for which it is clear at the outset that no search will produce the records sought," *Reyes v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014), citing *Sack v. U.S. Dep't of Def.*, 6 F. Supp. 3d 78, 88 (D.D.C. 2013), the declarant still must explain his rationale in a "relatively detailed" and "nonconclusory" fashion.  *See Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978).  All Herrington has done in his declaration is speculate that these documents do not exist and that a hard copy record search would be time consuming and futile without any actual explanation.

Since the Court concludes that DOD's interpretation of the request was not reasonable and that the declaration does not describe an adequate search, summary judgment in favor of DOD as to the adequacy of its search is inappropriate.[3]

## C.     The DOD Redactions are Justified Under FOIA Exemption 6

Turning to the records that DOD did identify and produce, the agency redacted certain information under FOIA Exemption 6.  Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To determine if an agency's redactions were proper, the Court "must weigh the 'privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy.'"  *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

DOD asserts that Exemption 6 justifies its redaction of the names, email addresses, and phone numbers of junior personnel from the produced documents.  Defs.' Mem. at 11; Herrington Decl. ¶¶ 7, 9.  Plaintiff does not challenge these redactions.  *See* Pl.'s Cross-Mem.  Therefore, the

---

3     In his reply, plaintiff raises another issue concerning DOD's search – namely, that DOD referred plaintiff's FOIA request to the Department of the Army and plaintiff has since received additional responsive records.  Pl.'s Cross-Reply at 4–5; Second Decl. of Raymond C. Pulliam [Dkt. # 20-1] ("Second Pulliam Decl.") ¶¶ 2–3.  Neither of Herrington's declarations describe the search conducted by the Department of the Army, let alone mention the transfer of plaintiff's request.  Plaintiff asserts that such a failure to mention or disclose this referral "suggests either that Mr. Herrington has intentionally omitted providing this information to the Court in bad faith, or in the alternative, that Mr. Herrington lacks the required personal knowledge of supervising the agency's search actions for this FOIA request."  Pl.'s Cross-Reply at 5.  The Court expects such defects to DOD's search and supporting declaration to be cured on remand, and therefore, it will not grant plaintiff's request for leave to conduct limited telephonic depositions of DOD witnesses at this time.  *See id.*

Court will grant summary judgment for defendant DOD with respect to all records redacted under this exemption.

### D.    DOD Disclosed All Reasonably Segregable Material

Even when a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability . . . even if the requester did not raise the issue of segregability before the court." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (internal citations omitted).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Id.* at 1117, citing *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). The amount of "evidence required to overcome the presumption is not clear," but if the requester successfully rebuts the presumption, "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

Here, DOD asserts that "no reasonably segregable information has been withheld" and that "all documents reviewed were processed to achieve maximum disclosure consistent with the provisions of FOIA." Defs.' Mem. at 14; Herrington Decl. ¶ 11. Herrington declares that the "only redactions taken in the 57 pages provided to [p]laintiff were minor redactions" involving personal information of junior personnel and that "[n]o substantive comments were redacted." Herrington Decl. ¶ 7. He adds that all of the documents were "carefully reviewed for reasonable segregation of non-exempt information." *Id.* ¶ 11.

Plaintiff does not raise any issue with respect to the redactions or the agency's compliance with its obligations. Because there is nothing in the record to indicate that DOD's redactions were

inappropriate, the Court will accept Herrington's assertions and find that DOD released all reasonably segregable information. *See Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 114–15 (D.D.C. 2010), quoting *Judicial Watch, Inc. v. Dep't of Justice*, No. 01-cv-639, 2006 WL 2038513, at *5–6 (D.D.C. July 19, 2006).[4]

## III.    The EPA Request

Plaintiff's request to EPA called for all documentation related to a particular investigation or complaint.  To describe its search for records, EPA has proffered the declaration of Scott Levine, an Associate Counsel in the EPA Office of the Inspector General ("OIG") Office of Counsel who is also the FOIA Officer for the EPA OIG.  *See* Levine Decl. ¶ 1.  Levine explains that it is his responsibility to assign FOIA requests to the appropriate OIG office, and that based on his review of plaintiff's request, he "determined that the OIG Office of Investigations and the Immediate Office of the Inspector General were the offices most likely to contain responsive records, if any." *Id.* ¶¶ 1, 9.

### A.    The OIG Office of Investigations Search

Levine referred the request to the OIG Office of Investigations because it is "responsible for the OIG Hotline, which receives complaints of fraud, waste, and abuse in the EPA programs and operations," and it "manages, sets policy, coordinates, and has overall responsibility for criminal investigations of allegations of various matters including: financial fraud involving EPA programs or funds . . . and employee misconduct."  Levine Decl. ¶¶ 10–11.  After the Office of Investigations

---

4      The Court makes this conclusion based on the understanding that DOD did not withhold any documents from its production and that it withheld only personal identifying information contained within the fifty-seven pages of responsive documents.  DOD is advised to draft its declarations more precisely in the future, as Herrington's declaration seems to include boilerplate language that risks confusion.  *See* Herrington Decl. ¶ 11 ("[I]t has been determined that no segregation of meaningful information in the *withheld documents* can be made without disclosing information warranting protection under the law.") (emphasis added).

determined that any responsive records would be contained within three electronic databases that maintained investigative complaints and cases from 2003 to present, it conducted a search specific to each database.  *Id.* ¶ 12.

The Office of Investigations searched the Inspector General's Operation and Reporting System ("IGOR"), "a case management system that was used prior to 2007," using keywords in the following pre-defined fields: (1) last name, (2) organization, and (3) case title.  Levine Decl. ¶ 12(a).  The Office of Investigation utilized the following search terms, which were "selected based on a review of the request and the letter attached to the request":  "Christine Todd Whitman, William A. Weinischke, Administrator, Environmental Working Group, Janet MacGillivray, Riverkeeper Inc, Marianne Horinko, [and] Anniston."  *Id.*

Next, the Office of Investigation searched a "case management system called 12M, which is a database that tracks all investigations subsequent to IGOR."  Levine Decl. ¶ 12(b).  The Office of Investigation searched the database with the same terms listed above in two ways: first by using the "individual/institution" search field, and second by using the keyword search function to enable a broader search.  *Id.*  The keyword search used a shorter part of the search terms listed above, which were "still considered to be unique," in order to generate more results.  *Id.*

Finally, the Office of Investigation's Hotline Desk Officer searched the hotline database, "an indexed Lotus Notes Database" used between 2002 and 2010.  Levine Decl. ¶ 12(c).  The Hotline Desk Officer searched the database by entering the same search terms listed above "into the Lotus Notes search field . . . which searches all indexed text."  *Id.*

After these searches, the Office of Investigations informed the OIG Office of Counsel that it had not identified any records responsive to plaintiff's request.  Levine Decl. ¶ 13.

### B.     The OIG Immediate Office Search

Levine also determined that the OIG Immediate Office might possess responsive documents "[b]ecause [plaintiff's] FOIA request indicated correspondence had been sent to Nikki Tinsley, who was the Inspector General in June 2003," and the OIG Immediate Office is where the Inspector General is located.  Levine Decl. ¶ 14.  Therefore, Levine transmitted the request to the Immediate Office to search for responsive records to plaintiff's request.  *Id.*

The Immediate Office designee "searched the file cabinet where records of this type for the time period of the request . . . would be stored."  Levine Decl. ¶ 15.  The designee also reported that "the request exceeds the record retention date of the type of records sought by [p]laintiff" pursuant to EPA Records Schedule 127, which "provides that incoming letters and enclosures may be destroyed five years after file closures."  *Id.*  The Immediate Office designee informed the OIG Office of Counsel that it had no records responsive to plaintiff's FOIA request.  *Id.* ¶ 16.

### C.     The EPA Search was Inadequate

Although the Levine declaration does contain descriptive information about the various searches conducted within the Office of Investigations and OIG Immediate Office, and it explains why the request was assigned to those offices, it omits certain information that would enable the Court to conclude that EPA's search was adequate.

With regard to the Office of Investigations search, the declaration simply states that the Office of Investigations "determined that potentially responsive records, if any, would be stored in any of three electronic databases," Levine Decl. ¶ 12, without explaining why these were the only locations searched and without stating that "no other record system was likely to produce responsive documents."  *See Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92.  Moreover, even though the declaration states that these databases include "investigative

complaints and cases," Levine Decl. ¶ 12, the declaration provides no explanation as to why a

search of those systems would satisfy plaintiff's request to search for "all documentation related

to" the complaint filed.  *See* EPA Ex. A to Defs.' Mot.

Turning to the OIG Immediate Office search, the description of the search within one file

cabinet "where records of this type for the time period of the request . . . would be stored" is too

cursory to persuade the Court that the search was adequate.  *See Oglesby*, 920 F.2d at 68

(concluding that an affidavit that merely states that a search was conducted in the "record system

most likely to contain the information which had been requested for the time period" did not show

that the search method was "reasonably calculated to uncover all relevant documents").  Moreover,

the declaration fails to describe the designee's "rationale for searching certain locations and not

others," *Defs. of Wildlife*, 623 F. Supp. 2d at 92, explain why one file cabinet in the Immediate

Office was the only "reasonably likely location[]" to contain the records sought,  *Hooker v. U.S.*

*Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 51 (D.D.C. 2012), or describe how the

Immediate Office or this particular file cabinet were actually searched.  *See Steinberg v. U.S. Dep't*

*of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).[5]

---

[5]     The Immediate Office designee's contention that "the request exceeds the record retention
date of the type of records sought by [p]laintiff" because an EPA Records Schedule "provides that
incoming letters and enclosures may be destroyed five years after file closure," Levine Decl. ¶ 15,
does not support the agency's contention that summary judgment is appropriate.  Although the
Records Schedule does authorize the disposition of certain records, it only applies to "copies of all
non-controlled correspondence and memoranda relating to work accomplishments, personnel
needs, and other routine activities of the office," such as "incoming letters and enclosures," and
excludes "any records already in electronic form."  EPA Ex. C to Defs.' Mot. [Dkt. # 11-8].  The
Court cannot determine whether any files contained in the Immediate Office file cabinet searched
here might fall within this definition or the exception for electronic documents.  *See Valencia-*
*Lucena*, 180 F.3d at 328 (finding the defendant's contention that summary judgment is appropriate
because the requested records are routinely destroyed lacked merit).  As a general principle,
"claims of destruction or non-preservation cannot sustain summary judgment."  *Id.*

The Levine declaration fails to indicate that the searches were conducted for the broader category of records that plaintiff requested. For instance, the declaration does not explain why a search was not conducted in the Inspector General's email or electronic files when the request sought *all* documentation *related* to the complaint filed by Heather White. And none of the search terms even included Heather White's name or position.

Therefore, the Court finds that the declaration does not describe an adequate search and summary judgment for the agency is inappropriate at this time.

## IV.    The DOJ Request

### A.    The DOJ Search

DOJ provided the declaration of Jeanetta M. Howard to support its assertion that it conducted an adequate search in response to plaintiff's FOIA request. *See* Howard Decl. Howard is a "Government Information Specialist for the Office of the Inspector General, United States Department of Justice (OIG)," who is "familiar with the procedures followed in processing" FOIA requests and who is specifically familiar with "the OIG's responses to the FOIA request at issue" here. *Id.* ¶ 1. The OIG has many responsibilities including investigating "allegations of criminal wrongdoing and administrative misconduct on the part of" DOJ employees, as well as auditing programs and operations that "contract with or receive benefits from" DOJ. *Id.* ¶ 2.

"The OIG maintains separate records relating to its investigative, audit[,] and inspection functions." Howard Decl. ¶ 12. Investigative records include records "relating to complaints of misconduct received by the OIG and to any investigation of those complaints conducted by the OIG," and the records are "indexed by names of the individual subject or subjects and/or by the name of the complainant and can be electronically searched by the names of those individuals." *Id.* ¶ 3. In comparison, OIG audit records are indexed by title, and the OIG "can search these

records by those titles, by audit or inspection number, or by Department component, but not by a particular individual's name." *Id.* ¶ 4.

Howard "personally searched the OIG's Investigation Data Management System (IDMS), the OIG's investigative records database," using the following search terms: "Todd Whitman and William A. Weinischke." Howard Decl. ¶ 7. She explained that "IDMS is the only database that would contain the necessary information responsive to plaintiff's request and it is the only database that would contain responsive documents." *Id.* Howard concluded that no responsive records were located "[a]fter conducting a thorough search." *Id.* ¶¶ 6–7.

**B.     The DOJ Search was Inadequate**

Howard's declaration "is so general as to raise serious doubt" whether DOJ "conducted a reasonably thorough search of its records." *Steinberg*, 23 F.3d at 551. Although Howard's declaration does provide the search terms she used, as well as a brief description of the database she searched, the declaration does not "explain the scope and method of the agency's search in a non-conclusory fashion." *See Nat'l Sec. Counselors*, 849 F. Supp. 2d at 11. Rather, all Howard claims is that she "searched the OIG's investigative records database using the names," Howard Decl. ¶ 7, without explaining with "reasonable detail" how she utilized the search terms – for example, using a keyword search or some other method – or why she chose to limit the search to one database. *See Oglesby*, 920 F.2d at 68.

And even though Howard claims that "IDMS is the only database that would contain the necessary information responsive to plaintiff's request and it is the only database that would contain responsive documents," Howard Decl. ¶ 7, such a conclusory statement is insufficient. *See Morley*, 508 F.3d at 1121–22. "At the very least, [DOJ] was required to *explain* in its affidavit

that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68 (emphasis added); *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92.  DOJ did not do so.

Moreover, the search terms Howard used in and of themselves raise doubt with the Court that she performed an adequate search, and Howard's conclusory assertion that she "conduct[ed] a thorough search," Howard Decl. ¶ 7, "does not provide sufficient detail for the [C]ourt itself to determine the search's adequacy."  *See Morley*, 508 F.3d at 1121.  Plaintiff sought "all documentation related to [the] investigation/complaint filed by Heather White . . . regarding allegations against: Christine Todd Whitman . . . and William A. Weinischke," and he attached a copy of the letter transmitted to DOJ by Heather White.  DOJ Ex. to Defs.' Mot. at 1.  But Howard only used two search terms:  "Todd Whitman" and "William A. Weinischke."

Because Howard only used the term "Todd Whitman," it is likely that the search missed potentially responsive documents that included Whitman's full name or that even described her as "Christine Whitman" or "Ms. Whitman."  The converse is also true as applied to the use of Weinischke's full name – the search may have missed documents that did not identify him by his full name but that identified him by "William Weinischke" or "Mr. Weinischke."  Further, the use of just these two names demonstrates that Howard did not understand the scope of plaintiff's request, which sought all documents *relating* to the complaint filed by Heather White.

The request even attached a copy of the White complaint, and from that complaint, Howard could have and should have identified additional search terms – such as the term "Heather White" – tied to the subject matter of the complaint.  Therefore, "a review of the record raises substantial doubt" that certain materials were overlooked.  *Valencia-Lucena*, 180 F.3d at 326; *see also Truitt*, 897 F.2d at 542.

Because Howard's declaration does not describe an adequate search, summary judgment on the adequacy of DOJ's search is not proper.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendants' declarations do not attest to adequate searches conducted by DOD, EPA, and DOJ in response to plaintiff's FOIA requests. Therefore, defendants' motion for summary judgment will be DENIED IN PART, and plaintiff's motion will be DENIED in its entirety as moot, and the Court will remand this case to the agencies. The agencies are instructed to conduct a further search for responsive records, to provide a more detailed justification for the adequacy of their searches, and to release any reasonably segregable non-exempt material to plaintiff consistent with FOIA.  With respect to the fifty-seven pages of documents DOD produced to plaintiff, the Court finds that those documents were properly redacted under FOIA Exemption 6 and that DOD met its segregability requirement.  Thus, defendants' motion for summary judgment is GRANTED IN PART as to records DOD already produced.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 16, 2017