# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
RAYMOND C. PULLIAM,                                 )
)
        Plaintiff,                               )
)
        v.                                            )       Civil Action No. 15-1405 (ABJ)
)
UNITED STATES ENVIRONMENTAL                )
PROTECTION AGENCY, *et al.*,                      )
)
        Defendants.                            )
_____)

## MEMORANDUM OPINION

Plaintiff Raymond Pulliam brought this action against defendants Environmental Protection Agency ("EPA"), United States Department of Defense ("DOD"), and United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), seeking records related to an investigation into toxic contamination at a former Army base, Fort McClellan. Compl. ¶¶ 13, 27, 40 [Dkt. # 1]. On February 16, 2017, the Court remanded the case to all three agencies, instructing them to "conduct a further search for responsive records, to provide a more detailed justification for the adequacy of their searches, and to release any reasonably segregable non-exempt material to plaintiff consistent with FOIA." *Pulliam v. EPA*, 235 F. Supp. 3d 179, 194 (D.D.C. 2017).

Both parties have filed renewed motions for summary judgment. *See* Renewed Mot. for Summ. J. on Pl.'s Compl. [Dkt. # 25] ("Defs.' Renewed Mot."); Mem. of P. & A. in Supp. of Defs.' Renewed Mot. [Dkt. # 25-1] ("Defs.' Renewed Mem."); Pl.'s Renewed Mot. for Summ. J. [Dkt. # 26] ("Pl.'s Renewed Cross-Mot."); Pl.'s Combined Mem. in Opp. to Defs.' Renewed Mot. & in Supp. of Pl.'s Renewed Cross-Mot. [Dkt. ## 26–27] ("Pl.'s Renewed Cross-Mem.").

Defendants maintain that they have fulfilled all of their obligations under FOIA, *see generally* Defs.' Renewed Mem., but plaintiffs argue that defendants' declarations do not adequately explain their searches and that therefore, defendants have "fail[ed] to meet their statutory burden to demonstrate that they have undertaken a search reasonably calculated to locate all responsive records to [p]laintiff's FOIA requests at issue in this action." Pl.'s Renewed Cross-Mem. at 1.

Because the Court finds that each agency has failed to establish that it conducted an adequate search for records under FOIA, it will deny defendants' motion in part, remand the matter to the agencies, and deny plaintiff's motion as moot. However, because the redaction of information from the pages produced by EPA was justified under a FOIA exemption, and EPA produced all segregable information, the Court will grant defendants' motion in part. Further, plaintiff is entitled to undertake limited discovery regarding DOD's searches.

## BACKGROUND[1]

Plaintiff submitted a FOIA request to each agency named in this action. His requests to DOJ and EPA were identical, while his request to DOD sought different information.

On December 13, 2014, plaintiff requested the following information from DOD:

> All correspondence whether in electronic or handwritten format, including but not limited to electronic mail (email), memorandums, or other documents related to H.R. 411 (Fort McClellan Health Registry Act), H.R. 2052 (For McClellan Health Registry Act), Fort McClellan exposures, Fort McClellan toxic contamination, H.R. 4816 (Toxic Exposure Research and Military Family Support Act of 2014), and / or H.R. 5680 (Veterans' Toxic Wounds Research Act of 2014).

---

1  Neither party submitted a statement of facts in support of their renewed motions for summary judgment. Rather, plaintiff expressly adopted his prior statement of facts, *see* Pl.'s Statement of Material Facts to Which There is no Genuine Dispute [Dkt. # 26-1]. Therefore, the Court will refer to the parties' statements of fact filed as part of their original motions for summary judgment. *See* Defs.' Statement of Undisputed Material Facts [Dkt. # 11-2] ("Defs.' SOF"); Pl.'s Statement of Material Facts to Which There is No Genuine Issue & Resp. to Defs.' SOF [Dkt. # 15-1] ("Pl.'s SOF").

Ex. A to Pulliam Decl. [Dkt. # 15-2]; Defs.' SOF ¶ 1; Pl.'s SOF ¶ 7. The date range for the record

search was May 1, 2013 through December 12, 2014. Ex. A to Pulliam Decl.; Defs.' SOF ¶ 1;

Pl.'s SOF ¶ 7. Plaintiff ultimately narrowed his request to correspondence on the same subject

matter "to, from or carbon copied (CC)" to Elizabeth King and Mary McVeigh. Ex. B to Pulliam

Decl.; Defs.' SOF ¶¶ 2–3; Pl.'s SOF ¶ 7. DOD provided fifty-seven responsive pages to plaintiff,

and the Court already ruled that the redactions from those documents were proper pursuant to

Exemption 6. *See Pulliam*, 235 F. Supp. 3d at 189.

On February 25, 2015, plaintiff sent a FOIA request to EPA and the Office of Inspector

General at the Department of Justice ("DOJ OIG"). Defs.' SOF ¶¶ 16, 31; Pl.'s SOF ¶¶ 8–9; Decl.

of Scott Levine [Dkt. # 11-7] ("Levine Decl.") ¶ 4. Plaintiff sought the following information:

> All documentation related to investigation/complaint filed by Heather
> White, General Counsel Environmental Working Group on June 26, 2003;
> VIA FACSIMILE & FIRST CLASS MAIL and addressed to: Glenn A.
> Fine, US Department of Justice, Office of the Inspector General and Nikki
> L. Tinsley, US Environmental Protection Agency Office of the Inspector
> General regarding allegations against: Christine Todd Whitman,
> Administrator of the EPA and William A. Weinischke, Department of
> Justice Senior Counsel.

EPA Ex. A to Defs.' Mot. for Summ. J. [Dkt. # 11-8]; Defs.' SOF ¶ 16; Pl.'s SOF ¶ 8. Plaintiff

also included, or provided a link to, the June 26, 2003 letter from Heather White referenced in the

request. Defs.' SOF ¶ 17; *see* EPA Ex. B to Defs.' Mot. for Summ. J. [Dkt. # 11-8]; DOJ Ex. 1 to

Defs.' Mot. for Summ. J. [Dkt. # 11-6]. Due to a backlog of FOIA requests, the EPA OIG was

only able to provide plaintiff with a status update before plaintiff filed suit. Defs.' SOF ¶¶ 20–21.

And the DOJ OIG responded to plaintiff's request by letter dated March 3, 2015 and informed him

that no responsive documents had been located. *Id.* ¶ 35.

Plaintiff filed a complaint in this Court on August 28, 2015. *See* Compl. The parties filed

cross-motions for summary judgment, Defs.' Mot. for Summ. J. [Dkt. # 11]; Pl.'s Cross-Mot. for

Summ. J. [Dkt. # 15], and in its February 16, 2017 Memorandum Opinion, the Court denied

defendants' motion in part, found plaintiff's motion to be moot, and remanded the case to the

agencies for further action. *See Pulliam*, 235 F. Supp. 3d at 194.

On May 26, 2017, defendants filed their renewed motion for summary judgment, Defs.'

Renewed Mot., and plaintiff filed his opposition and cross-motion on June 28, 2017. Pl.'s

Renewed Cross-Mot. The motions have been fully briefed.[2]

## STANDARD OF REVIEW

The standard of review under Federal Rule of Civil Procedure 56, and the legal standard

under FOIA and for the adequacy of a search, were set out fully in the Court's previous opinion.

*See Pulliam*, 235 F. Supp. 3d at 185–87. The same legal framework applies now.

## ANALYSIS

### I. The Department of Defense

In its previous memorandum opinion, the Court concluded that DOD's search was

inadequate because it limited its search to electronic mail when plaintiff's request was broad

enough to cover all correspondence "to, from, or cc'd to Elizabeth King or Mary McVeigh,"

including, but not limited to, electronic mail, memoranda, or other documents, in electronic or

handwritten format. *Pulliam*, 235 F. Supp. 3d at 188–89. DOD maintains that it has now

conducted an adequate search. *See* Defs.' Renewed Mem. at 6; Defs.' Renewed Reply at 3–5. But

the Court finds that DOD still falls short.

---

2       *See* Defs.' Reply in Supp. of Defs.' Renewed Mot. [Dkt. # 28] ("Defs.' Renewed Reply);
Pl.'s Reply in Supp. of Pl.'s Renewed Cross-Mot. [Dkt. # 29] ("Pl.'s Renewed Cross-Reply").

### A.    The Supplemental DOD Searches

To support its contention that it has conducted an adequate search, DOD offered the declaration of Mark H. Herrington, the Associate Deputy General Counsel in the agency's Office of General Counsel ("OGC"), who is currently supervising this FOIA case. *See* Third Decl. of Mark H. Herrington [Dkt. # 25-2] ("Third Herrington Decl.") ¶¶ 1–2.

Herrington averred that, pursuant to the Court's opinion, he instructed the Office of the Secretary of Defense/Joint Staff FOIA office to task the offices of the Assistant Secretary of Defense for Legislative Affairs and the Under Secretary of Defense for Acquisition, Technology, and Logistics to conduct a search of their paper records for responsive material. Third Herrington Decl. ¶ 4. He explained that he asked the office of the Assistant Secretary of Defense for Legislative Affairs to conduct a search because it was the "office in which the two individuals worked." *Id.* And he stated that the office of the Under Secretary of Defense for Acquisition, Technology, and Logistics conducted a search because the "broad mission of the office" covered the subject matter of plaintiff's request. *Id.*

On March 31, 2017, a management services specialist and the deputy director of operations for the office of the Assistant Secretary of Defense for Legislative Affairs informed the FOIA office that they did not locate any responsive documents to plaintiff's request, and they further advised that any correspondence by Elizabeth King or Mary McVeigh during the relevant time period "would only be stored electronically." Third Herrington Decl. ¶ 5. And a few days later, the Deputy Assistant Secretary of Defense for Environment, Safety and Occupational Health and the Assistant for Safety and Health within the office of the Under Secretary of Defense for Acquisition, Technology, and Logistics told the FOIA office that no responsive materials were located because the office "does not maintain paper files of correspondence on coordination or

collaborations" during the relevant time period. *Id.* ¶ 6. But this does not end the matter because the Court cannot find that the searches were adequate.

**B.    The Supplemental DOD Searches are Inadequate**

In his original declaration, Herrington said that he asked DOD Enterprise IT Services Directorate ("EITSD") to search the emails of the two individuals named in plaintiff's request. *See* First Decl. of Mark H. Herrington [Dkt. # 11-3] ("First Herrington Decl.") ¶ 6. The Court ruled that DOD's initial searches were inadequate not only because they did not include a search for paper records, but because the search for electronically stored material was improperly limited to electronic mail and not other digitally stored records. *See Pulliam*, 235 F. Supp. 3d at 189. DOD's declarant now avers that he originally asked EITSD to search all electronic files, not just emails, in the office of the Assistant Secretary of Defense for Legislative Affairs. Fourth Decl. of Mark H. Herrington [Dkt. # 28-1] ("Fourth Herrington Decl.") ¶ 7. As a result, DOD argues that it has conducted an adequate search for electronic records. *See* Defs.' Renewed Reply at 3.

Plaintiff contends that "there remains a factual dispute as to whether the agency actually performed a search for all electronic records, as [defendant] now claim[s], [or] if the agency's prior sworn testimony evidence, indicating that [it] only searched for email records, was true and accurate." Pl.'s Renewed Cross-Reply at 1–2. And plaintiff requests "leave to undertake a limited telephonic deposition of a DOD designated witness" pursuant to Federal Rule of Civil Procedure 56(d) to clarify what search was actually performed. *Id.* at 2.

While there is a presumption of good faith that attaches to agency declarations, and the fourth declaration is supported by the fact that three electronic records that are not emails were

produced, *see* Fourth Herrington Decl. ¶¶ 8–10, the discrepancy gives rise to a question of fact that is best resolved by discovery.[3]

The Court's previous analysis of the DOD's search was based on its declarant's description of an electronic search that only covered emails. DOD never once sought to supplement or correct Herrington's declaration, it did not seek reconsideration of the Court's ruling on the grounds of mistake, and it never argued in its papers that the search included electronic files other than emails.[4]

---

3      Moreover, Herrington states that of the three documents, only one was responsive, and that document was an attachment to an email. *See* Fourth Herrington Decl. ¶¶ 8–10.

4      In defendants' original motion, DOD argued that "the request was for electronic mail of two particular individuals . . . ." Defs.' Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 11-1] at 9. And in their reply, they seemed to double-down on that position by arguing that the "use of 'to, from, or carbon copied (CC)' strongly indicates [p]laintiff['s] intent to obtain email communication, and limiting the search to emails was a reasonable calculation for an efficient search that would locate all responsive records." Defs.' Reply in Supp. of Mot. for Summ. J. [Dkt. # 17] at 6.

For those reasons, the Court will grant plaintiff's request to take a limited telephonic deposition of a DOD witness that is no more than ninety minutes in length.[5]

Turning to DOD's search for paper records, DOD maintains that it conducted an adequate search of the office of the Assistant Secretary of Defense for Legislative Affairs and of the office of the Under Secretary of Defense for Acquisition, Technology, and Logistics because the declaration "describes with reasonable detail DOD's search processes and the document retention policies" of the offices. Defs.' Renewed Reply at 5. However, the Herrington declarations do not do so.

The declarant averred that he was informed by the office of the Assistant Secretary of Defense for Legislative Affairs that because Ms. King and Ms. McVeigh no longer worked there,

---

5       Under Federal Rule of Civil Procedure 56(d), the Court may grant a request for additional discovery "[if] a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The affidavit must state with sufficient particularity why additional discovery is necessary. *U.S. ex rel. Folliard v. Gov. Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014), citing *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012). Specifically, it must (1) "outline the particular facts the non-movant intends to discover and why those facts are necessary to the litigation"; (2) "explain why the non-movant could not produce the facts in opposition to the motion for summary judgment"; and (3) "show the information is in fact discoverable." *Id.*, quoting *Convertino*, 684 F.3d at 99–100 (internal citations and edits omitted). Typically, a Rule 56(d) request is granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence," *id.*, quoting *Convertino*, 684 F.3d at 99, and a district court has discretion in determining whether it should permit additional discovery. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002). Here, plaintiff has not submitted an affidavit in support of his request for additional discovery. However, such a failure does not automatically doom his request because the D.C. Circuit has held that a "more flexible approach" to the discovery requirement is appropriate when other filings "serve[] as the functional equivalent to the affidavit." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988) ("The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition."), citing *Sames v. Gable*, 732 F.2d 49, 51– 52 & n.3 (3d Cir. 1984). Here, plaintiff has provided the Court with enough information in his pleadings for the Court to understand the need for additional discovery. Without it, plaintiff cannot adequately oppose defendants' motion for summary judgment, and the Court may not receive the information it needs to rule on DOD's search of electronic documents.

all of their paper files had been "placed into burn bags and incinerated," and any other correspondence by them "would only be stored electronically." Third Herrington Decl. ¶ 5; Fourth Herrington Decl. ¶ 4. This account raises a number of concerns.

First, even if the office of the Assistant Secretary of Defense for Legislative Affairs has a policy to incinerate paper files when a staff member departs, that does not automatically mean that a physical search for records would not have turned up responsive documents. Since the request covered correspondence *from* the two employees in question, as well as to them, the declarant failed to explain why other searches would not have been fruitful.[6]

Second, in his fourth declaration, Herrington avers that the person currently at the work space that was once occupied by Ms. McVeigh was asked "to search the space *again* to ensure no files of these individuals remained in the space." Fourth Herrington Decl. ¶ 4 (emphasis added). Not only is this description vague, but it suggests that a prior search occurred that has not been previously described.

---

6      Plaintiff expresses concern over this alleged "policy," arguing that "DOD has not presented any evidence in this action to support that there is any lawful authorization for the agency staff . . . to destroy ALL paper records in this manner, and as such a practice obviously defeats the central purpose of FOIA." Pl.'s Renewed Cross-Reply at 2. And he requests limited discovery "in the form of a limited telephonic deposition of a DOD designated witness, regarding the agency's new claim to have allegedly destroyed responsive records by incinerating all paper records of officials leaving the DOD Office of Legislative Affairs, and to discuss whether those actions were lawfully undertaken, or otherwise undertaken in bad faith to prevent public oversight." *Id.* at 2–3. As a general principle, "claims of destruction or non-preservation cannot sustain summary judgment." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999) (concluding the defendant's contention that summary judgment is appropriate because the requested records are routinely destroyed lacked merit). While there are no facts in the record that would give rise to an inference of bad faith, the Court observes that DOD's declarant does not aver that the office of the Assistant Secretary of Defense for Legislative Affairs has an incineration policy that was followed in this case – he simply states that records were destroyed. So, the Court agrees that limited additional discovery is necessary to shed light on the circumstances surrounding the destruction of the documents at issue.

At bottom, Herrington fails to provide the "rationale for searching certain locations and not others," *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009), and he does not describe how the spaces were actually searched. *See Steinberg v. DOJ*, 23 F.3d 548, 551–52 (D.C. Cir. 1994). Therefore, his description of a search for paper records is too cursory to enable the Court to determine whether the search was adequate. *See Valencia-Lucena*, 180 F.3d at 326 (observing that a declaration describes an adequate search because it sets forth a comprehensive description of how an office maintains records and how the search was conducted).

The same problems arise in connection with the search conducted by the office of the Under Secretary of Defense for Acquisition, Technology, and Logistics. In his third declaration, Herrington makes the conclusory statement that "a paper search was conducted, but the office does not maintain paper files of correspondence on coordinations or collaborations during the time of May 1, 2013, and December 12, 2014." Third Herrington Decl. ¶ 6. His supplemental declaration adds little; it states that the office of the Under Secretary of Defense for Acquisition, Technology, and Logistics "searched their files and informed [him] that they have no paper records of correspondence" during the relevant time frame. Fourth Herrington Decl. ¶ 5. Neither declaration contains the necessary description of the search that was undertaken.

For these reasons, summary judgment in favor of DOD is inappropriate at this time.[7]

---

7       The Court expressed concern in its previous ruling about whether DOD was withholding information regarding a referral of plaintiff's request to the Department of the Army, and it expected DOD's declaration to be "cured on remand." *See Pulliam*, 235 F. Supp. 3d at 189 n.3. Herrington has provided the Court with a sufficient explanation that the referral to the Army was a mistake and based on an incorrect interpretation of plaintiff's FOIA request. *See* Third Herrington Decl. ¶¶ 8–12. Plaintiff does not raise any issue with the declarant's explanation, and the Court is satisfied that defendant has met its obligation on this issue.

## II. The Environmental Protection Agency

In its original decision, the Court found EPA's searches to be inadequate because the agency's declarant did not explain why the three record systems searched in the OIG Office of Investigation were the only places where responsive documents were likely to be found, and because the description of the search of the OIG Immediate Office was "too cursory to persuade the Court that the search was adequate." *Pulliam*, 235 F. Supp. 3d at 192. The Court also observed that the search terms used in both searches were too limited. *See id.*

With its renewed motion for summary judgment, EPA has offered the supplemental declaration of Scott Levine. *See* Suppl. Decl. of Scott Levine [Dkt. # 25-4] ("Suppl. Levine Decl."). The Court concludes that the EPA has now conducted an adequate search for records with the exception that the declaration concerning the new search of the Office of Congressional and Public Liaison records is insufficient.

### A. The Supplemental Search of the OIG Office of Investigations

Scott Levine of the EPA averred that he "requested that the Office of Investigations conduct a supplemental search of the three electronic databases which maintain investigative complaints." Suppl. Levine Decl. ¶ 3. The Office of Investigations conducted another search of the Inspector General's Operation and Reporting System ("IGOR"), a case management system called 12M, and the Office of Investigations hotline database. *Id.* ¶ 4 n.2. In addition to using the search terms identified in Levine's original declaration,[8] the Office of Investigations added the following terms in order to ensure "that this search would more broadly search for any documents

---

8        "The search terms used for the initial search were variations of the following keywords: Christine Todd Whitman, William A. Weinischke, Administrator, Environmental Working Group, Janet MacGillivray, Riverkeeper Inc., Marianna Horinko, and Anniston." Suppl. Levine Decl. ¶ 4 n.2.

related to the subject matter of the letter": "Heather"; "Heather White"; "Monsanto"; "June 26, 2003"; "Rule 3.4"; "ABA Formal Ethics Opinion 93-378"; "Glenn A. Fine"; "Glenn Fine"; "Joint Investigation"; "EWG." *Id.* ¶ 4. Upon reviewing the results, many of which included key words but were irrelevant to plaintiff's FOIA request, Levine concluded that "no potentially responsive documents were identified." *Id.*

In response to the Court's ruling, Levine "took the additional step to request that the Office of Investigations generate a list of all hotline complaints received from June 23, 2003 to July 24, 2004, and a list of all cases and complaints which opened" in the same time period. Suppl. Levine Decl. ¶ 5. After he manually reviewed the lists and the subject of each complaint, and he confirmed that no hotline complaint or investigation relevant to plaintiff's FOIA request had been opened, Levine concluded that "no potentially responsive investigative records existed." *Id.*

The Office of Investigations also expanded its search to include any hard copy correspondence "that may have been sent in response to the complaint described in the FOIA request because this is the only other type of record the Office of Investigations could have relating to the FOIA request." Suppl. Levine Decl. ¶ 6. The "Special Agent in Charge for Operations of the Office of Investigations" reviewed the Office of Investigations file plan and determined that the "Outgoing Correspondence" folder was the only folder category that would have potentially responsive documents. *Id.* ¶ 7. He or she then manually searched for potentially responsive documents in that file by looking for correspondence in the time period between 2003 and 2004. *Id.* ¶ 8. The Special Agent discovered that no files existed in the "Outgoing Correspondence" folder for any year prior to 2007, but went on to manually review the hard copy records from later years to "ensure that no responsive records had been misplaced in those files." *Id.* The Special Agent did not identify any potentially responsive records. *Id.*

## B.      The Supplemental Search of the OIG Office of Investigations is Adequate

"To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotation marks and citations omitted).  EPA's supporting declaration, particularly in combination with the information provided in the original declaration, explains in reasonable detail the scope and method of the searches for responsive documents, and absent "countervailing evidence or apparent inconsistency of proof," these declarations "suffice to demonstrate compliance with the obligations imposed by the FOIA."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)

With regard to the search for hard copy "Outgoing Correspondence" documents, plaintiff argues that defendants' declaration does not describe an adequate search because it does not provide an explanation "as to the disposition of all of the apparently unlocated years of correspondence records not found . . . for the specific time period of [p]laintiff's FOIA request." Pl.'s Renewed Cross-Mem. at 11–12.  Plaintiff also contends that the declarant does not provide "any discussion of any efforts to attempt to determine where the applicable hard copy correspondence files for that time period could be found."  *Id.* at 12.

But the fact that agency personnel did not have records that are more than ten years old on hand does not mean they did not comply with FOIA.  And Levine's explanation of the "Outgoing Correspondence" files is sufficient to satisfy the Court that EPA conducted an adequate search. Although the "Outgoing Correspondence" folder did not contain any files for any years prior to 2007, the OIG Records Officer confirmed that no Office of Investigations "Outgoing Correspondence" files for 2003 or 2004 had been sent to an offsite storage center.  *See* Suppl. Levine Decl. ¶ 9.  And, the OIG Records Officer reviewed the OIG's transmittal forms and

confirmed that no correspondence records had been sent for offsite storage between 2003 and present. *Id.*

Because an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search," *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004), and because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted), the Court finds that the declaration describes an adequate search that was reasonably calculated to uncover all relevant documents.

### C.    The Supplemental Search of the OIG Immediate Office

The Court's initial memorandum opinion noted that the search of one file cabinet in the OIG Immediate Office, and the declarant's description of why that was the only location searched, were insufficient to meet defendant's FOIA obligations. *See Pulliam*, 235 F. Supp. 3d at 192. It also questioned why a search was not conducted of the Inspector General's email or electronic files "when the request sought *all* documentation *related* to the complaint filed by Heather White." *Id.* (emphasis in original).

In response to the Court's opinion, the Immediate Office designee conducted a supplemental search for potentially responsive records. *See* Suppl. Levine Decl. ¶ 11. He or she reviewed the Immediate Office file plan and concluded that the "General Correspondence" file within the "Administrative Management" folder was the only folder and file category that was likely to contain records related to plaintiff's FOIA request. *Id.* ¶ 12. According to Levine, all "General Correspondence" files in the Immediate Office are maintained in hard copy, and they are located in one drawer of one file cabinet in the Immediate Office. *Id.* ¶ 13. Although the files are

organized chronically by year, the designee did not locate any "General Correspondence" files from prior to 2012. *Id.* After searching through all of the files to ensure that a 2003 or 2004 file had not been misplaced, the designee did not locate any relevant correspondence files. *See id.*

The EPA also expanded its search to include the National Correspondence Tracking and Information Management System ("NCTIMS"), an electronic database that tracks correspondence for the Inspector General, and the Correspondence Management System ("CMS"), which replaced NCTIMS in late 2004. Suppl. Levine Decl. ¶ 15. The "Agency point of contact" for CMS conducted keyword searches of CMS metadata, which also included the metadata from NCTIMS that had been imported into CMS. *See id.* ¶¶ 15–16. He or she searched the "[p]rimary subject field" using the following terms: "Heather, White, Heather White, EWG, 'Environmental Working Group,' Weinischke, Monsanto, Anniston, MacGillivray, Riverkeeper"; the "[c]itizen field" with the following terms: "Heather White, EWG, 'Environmental Working Group'"; and the "[a]ddressee field" for "White," "Tinsley," and "Fine." *Id.* ¶ 16.

All of the keyword searches were conducted without a date restriction. Suppl. Levine Decl. ¶ 16. Finally, a search was conducted "for every letter entered into CMS with a letter date of 6/23/03 or 6/24/03." *Id.*

The CMS point of contact provided all of the search results to the OIG Office of Counsel. Suppl. Levine Decl. ¶ 17. The results consisted of a list, which included the date on which the communication was received, the sender's name, and the subject. *Id.* Susan Barvenik, Associate General Counsel in the OIG Office of Counsel, reviewed the lists provided, identified CMS record OIG-0300945 as a potentially responsive document, and requested that the OIG Immediate Office designee retrieve the record. *Id.*; *see also* Decl. of Susan Barvenik [Dkt. # 28-3] ("Barvenik Decl.") ¶ 6. The record was located and produced to plaintiff; it "contains the data that had been

typed into NCTIMS" when Heather White's complaint was received. Barvenik Decl. ¶ 6; *see* Suppl. Levine Decl. ¶ 17; Ex. A to Suppl. Levine Decl. [Dkt. # 25-4] ("Ex. A").

Once the record was retrieved and identified as a record responsive to the FOIA request, Barvenik "determined that an additional search of CMS should be conducted based on the CMS tracking number." Barvenik Decl. ¶ 7. She requested that the OIG Immediate Office designee search CMS using the tracking number as the search term for the following fields: "notes"; "comments"; "instruction"; and "instr related note." *Id.* No responsive records were identified during this additional search. *Id.*

Levine noticed that the "instruction notes" on the produced CMS record, *see* Ex. A, indicated that a copy of the 2003 complaint letter would have been provided to a former EPA OIG employee named Eileen McMahon, Assistant Inspector General for the Office of Congressional and Public Liaison ("OCPL").[9] Suppl. Levine Decl. ¶ 19. He then requested that the administrative officer search for potentially responsive OCPL records related to the 2003 complaint letter, which Levine averred would have been in hard copy files called "Chron Files." *Id.* Since the administrative officer "determined that no 'Chron Files,'" other than congressional correspondence, are now maintained . . .[,] no responsive files were located for [p]laintiff's FOIA request." *Id.*

Levine also instructed the OIG IT Specialist to search for email accounts of the following five former OIG employees: Nikki Tinsley, the Inspector General; Mark Bialek, Counsel to the Inspector General; Eileen McMahon, the Assistant Inspector General for Congressional and Public Liaison; Michael Speedling, the Assistant Inspector General for Investigations; and Lorraine

---

9    "OCPL is now the Congressional and Public Affairs (OCPA) directorate in the OIG's Office of Counsel, Congressional and Public Affairs." Suppl. Levine Decl. ¶ 19.

Gentile, Acting Assistant Inspector General for Investigations. Suppl. Levine Decl. ¶¶ 20, 22. Between June 2003 and July 2004, OIG used the Lotus Notes application for email, but as of 2013, OIG changed to Microsoft Outlook for email. *Id.* ¶ 21. The Lotus Notes Administrator could only locate email accounts for three people – Nikki Tinsley, Mark Bialek, and Eileen McMahon – after searching "all possible locations for the Lotus Notes email accounts," which included: the main OIG Lotus Notes server, a 90-day rolling backup OIG Lotus Notes server, a secure OIT IT physical vault that contained the Ms. Tinsley's email on CD, and a 450 GB Seagate FreeAgent external storage device that contained a temporary backup of Lotus Notes email accounts as they existed on November 24, 2009. *Id.* ¶ 22. Ms. Tinsley's email records were found on a CD for the time period August 2002 to March 2006; and Mr. Bialek's email account and Ms. McMahon's email account were found on the OIG external storage device. *Id.* ¶ 24.

The OIG IT Specialist indexed the three email accounts so that the email records and any electronic attachments were searchable. Suppl. Levine Decl. ¶ 25. Levine then searched all emails and electronic files attached to emails in the three accounts, whether the emails were sent to or from the account user, by "entering the following keywords into the search function field for the Lotus Notes email accounts: Anniston, Weinischke, Heather & White, 'Heather White,' 'Environmental Working Group,' 'Glenn Fine,' 'DOJ OIG,' 'June 26,' EWG, Monsanto, Whitman, Glenn.A.Fine@usdoj.gov, DOJ & investigation & joint." *Id.* After the search, he concluded that two records were potentially responsive, and they were ultimately produced to plaintiff with redactions. *See id.* ¶¶ 26, 28; Ex. A.

### D.    The Supplemental Search of the OIG Immediate Office is Adequate with One Exception

EPA's subsequent Immediate Office search has largely satisfied the Court's initial concerns, but with the exception of the inquiry made to the Office of Congressional and Public Liaison.

With regard to the renewed search for hard copy files, the Court concludes that the declarant has described an adequate search.  Plaintiff takes issue with EPA's "failure to locate any hard copy record for the applicable 2003 or 2004 time period from the OIG Immediate Office 'General Correspondence' system of records," and he argues that defendant made no effort "to determine where the 'missing' applicable hard copy correspondence files for that time period could be found."  Pl.'s Renewed Cross-Mem. at 12.  But the OIG Records Office took steps to confirm that no Immediate Office general correspondence records had been sent offsite between 2003 and the present.  Suppl. Levine Decl. ¶ 14.  And, as the Court has previously noted, the agency's failure to locate particular documents does not undermine the determination that the search was adequate.[10]

The Court also concludes that the declarant has adequately described and explained the search methodology for the CMS search.  Plaintiff argues that EPA failed to undertake appropriate follow-up search actions once Barvenik determined that CMS record OIG-0300945 was a responsive record.  Pl.'s Renewed Cross-Mem. at 9.  He contends that EPA had a responsibility to

---

10    *See Wilbur*, 355 F.3d 678; *see also Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (observing that a search "is not unreasonable simply because it fails to produce all relevant material"), quoting *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986); *see also Iturralde*, 315 F.3d at 315 (concluding that the plaintiff did not provide evidence to overcome the adequacy of the agency affidavit when the search failed to turn up a particular document), citing *Steinberg*, 23 F.3d at 551.

conduct searches in the three databases utilizing the control number, *id.*, but the Court is satisfied with the steps that were taken.

Barvenik explained why she concluded that it was "unlikely that the CMS tracking number 'OIG-0300945' would identify any investigative records in the [other] relevant electronic databases." *See* Barvenik Decl. ¶ 9. First, the tracking number "is not in a format recognizable as a tracking number used by Office of Investigations" electronic databases. *Id.* ¶ 8. Second, the tracking number "was not even an OIG tracking number – but an automatically generated tracking number in the Agency correspondence management and tracking system." *Id.* ¶ 9. And third, "it is unlikely [the] CMS tracking number would have appeared in any investigative record without any of the key word terms that the OIG had already searched." *Id.* Because the previous searches in the three electronic databases had not identified any responsive documents, and the tracking number was in an unrecognizable format, the Court concludes that defendant's approach was reasonable. *See Mobley*, 806 F.3d at 582 (noting an agency's search is "generally adequate where the agency has sufficiently explained its search process and why the specified record systems [not searched] are not reasonably likely to contain responsive records").

With respect to EPA's search for responsive emails, defendant's supplemental declaration details the locations searched and the search terms used, and it provides an explanation for why it was likely that only five email accounts would include responsive records. *See* Suppl. Levine Decl. ¶ 20. There is no explanation for why only three out of the five Lotus Notes email accounts were located. But, Levine averred that the "Lotus Notes Administrator searched all possible locations for the Lotus Notes email accounts for the five former OIG employees identified." *Id.* ¶ 22. And an agency's failure to turn up particular documents does not undermine the reasonableness and adequacy of the search. *See Wilbur*, 355 F.3d at 678; *Mobley*, 806 F.3d at 583.

Further, plaintiff does not seem to challenge the agency's failure to find these two additional email accounts.

However, plaintiff does argue that the agency's search was inadequate because there "is not any indication that the agency made any effort to try to locate all responsive archived records (other than a search limited to archived emails) for any of the three specific individuals at the EPA OIG who are directly referenced" in the responsive emails that were produced. Pl.'s Renewed Cross-Mem. at 10. He insists that these three staff members "were in the initial stage of the process of discussing appropriate investigative actions regarding the complaint submitted by Ms. White," and that the EPA should have followed up on these leads "to determine the outcome of these initial OIG investigation actions." *Id.* at 11.

While an agency "must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry," *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998), an agency's search is "generally adequate" where the agency has explained its search process and why additional searches are not likely to produce responsive records. *See Mobley*, 806 F.3d at 582. Here, Levine adequately explained why no further searches were necessary. He averred that "no complaint, case, or investigation records in the Office of Investigations would be created without a corresponding entry in one of the three [database] systems," and "[n]o other OIG system exists for tracking complaints, cases or investigations." Suppl. Levine Decl. ¶ 3. And he stated that it is standard practice that whenever investigative emails or notes related to a complaint are created, they are attached to a case or complaint file. *Id.* ¶ 10. Thus, if further investigative steps had been taken by one of the three named individuals, those notes would have turned up in one of the searches that had already been conducted and that produced no responsive records. So Levine has sufficiently explained why specified record systems did not have to be searched again.

Finally, looking to the OCPL search, although the Levine declaration does contain some descriptive information about the files maintained by that office, it falls short in describing the search methodology used. The declaration simply states that Levine "requested that the administrative officer for OCPA search for potentially responsive OCPL records related to the 2003 complaint letter," and that the administrative officer determined that no responsive files were located. Suppl. Levine Decl. ¶ 19. But he does not provide any description of how the search was actually conducted. *See Steinberg*, 23 F.3d at 551–52. Therefore, more information is required on this one issue before summary judgment can be entered for EPA.

### E.    The EPA Redactions are Justified Under FOIA Exemption 6

Turning to the records that EPA did identify and produce, the agency redacted certain information under FOIA Exemption 6. Exemption 6 shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine if an agency's redactions were proper, the Court "must weigh the 'privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy.'" *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

EPA asserts that Exemption 6 justifies its redaction of three names contained within the produced documents. Defs.' Renewed Mem. at 17–18; Suppl. Levine Decl. ¶ 29. Plaintiff does not challenge these redactions. *See* Pl.'s Renewed Cross-Mem. Therefore, the Court will grant summary judgment for defendant EPA with respect to all records redacted under this exemption.

### F.  EPA Disclosed All Reasonably Segregable Material

Even when a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability . . . even if the requester did not raise the issue of segregability before the court."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (internal citations omitted).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Id.* at 1117, citing *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007).  The amount of "evidence required to overcome the presumption is not clear," but if the requester successfully rebuts the presumption, "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld."  *Id.*

Here, EPA asserts that "[e]ach document was individually examined to identify non-exempt information that could be reasonably segregated from exempt information for release."  Defs.' Renewed Mem. at 20; *see* Suppl. Levine Decl. ¶ 30.  Levine declares that "[t]he only redactions that were made on the produced documents were the names of the three individuals," and that the redactions took place following a "line-by-line review."  Suppl. Levine Decl. ¶ 30.  "All other segregable information has been released to [p]laintiff."  Defs.' Renewed Mem. at 20; *see* Suppl. Levine Decl. ¶ 30.

Plaintiff does not raise any issue with respect to the redactions or the agency's compliance with its obligations.  Because there is nothing in the record to indicate that EPA's redactions were inappropriate, the Court will accept Levine's assertions and find that EPA released all reasonably

segregable information.  *See Fischer v. DOJ*, 723 F. Supp. 2d 104, 114–15 (D.D.C. 2010), quoting *Judicial Watch, Inc. v. DOJ*, No. 01-cv-639, 2006 WL 2038513, at *5–6 (D.D.C. July 19, 2006).

## IV.    The Department of Justice

The Court's initial memorandum opinion held that the DOJ declarant's description of the search was "'so general as to raise serious doubt' whether DOJ 'conducted a reasonably thorough search of its records.'"  *Pulliam*, 235 F. Supp. 3d at 193, quoting *Steinberg*, 23 F.3d at 551. Although the declaration provided the search terms used, as well as a brief description of the database searched, the declaration did not explain the scope of the search or why the search was limited to only the Investigation Data Management System ("IDMS").  *See id.*  The Court also concluded that the minimal number of search terms used demonstrated that DOJ "did not understand the scope of plaintiff's request, which sought all documents *relating* to the complaint filed by Heather White."  *Id.* at 194 (emphasis in original).

### A.    The Renewed DOJ Search

With its renewed motion for summary judgment, DOJ has offered two supplemental declarations of Jeanetta M. Howard, a "Government Information Specialist for the Office of the Inspector General, United States Department of Justice (OIG)."  Suppl. Decl. of Jeanetta M. Howard [Dkt. # 25-3] (Suppl. Howard Decl.") ¶ 1; *see also* Second Suppl. Decl. of Jeanetta M. Howard [Dkt. # 28-2] ("Second Suppl. Howard Decl.") ¶ 1.  According to Howard, these declarations "elaborate on" the declarant's original description of the agency's search.  Suppl. Howard Decl. ¶ 2.

Howard explains that she failed to state in her earlier declaration that "a search was also conducted using other identifiers listed in [p]laintiff's request."  Suppl. Howard Decl. ¶ 4.  Not only did she search the names "Todd Whitman and William A. Weinischke," but she also searched

for "Heather White" and "Nikki L. Tinsley" at that time. *Id.* She also clarified that, in order to "ensure to encompass any records that would be retrievable by that name," the keyword searches included the first and last name of each person, as well as other searches involving various combinations of first, last, and middle name and initials. *See id.* ¶¶ 5–8.

Further, Howard now adds that she also "conducted a search in the OIG's electronic correspondence file for the immediate office of the Inspector General" by using the identifier "Heather White," as well as the June 26, 2003 date of the letter. Second Suppl. Howard Decl. ¶ 5. She explained that "[t]he correspondence file only tracks incoming and outgoing correspondence received in the OIG Front Office and does not contain any substantive records." *Id.* As a result of her search, she located an entry in the database "indicating that the OIG had received correspondence from Heather White to Inspector General Glenn Fine" on June 26, 2003. *Id.* According to the entry, the letter from Heather White had been sent to the Investigations Division on June 27, 2003. *Id.*; *see also* Ex. 1 to Suppl. Howard Decl. [Dkt. # 25-3] ("Ex. 1").[11]

Howard also tells the Court now that once she was armed with that information, she emailed Sharon Phelps, the Senior Investigative Specialist of the OIG's Investigations Division, on March 2, 2015 to determine whether the Investigations Division had any documents responsive to plaintiff's request, either in IDMS or any other database. Suppl. Howard Decl. ¶ 10; Second Suppl. Howard Decl. ¶ 6. Phelps "conducted a search of all names referenced in [p]laintiff's request in the IDMS and no responsive records were located." Suppl. Howard Decl. ¶ 11.

---

11    It is unclear if the database entry, attached as Exhibit 1 to Howard's supplemental declaration, has been produced to plaintiff. Howard never addresses the production of this document to plaintiff in her declarations, and in his cross-reply, plaintiff only asks why the agency did not previously locate the responsive record. *See* Pl.'s Renewed Cross-Reply at 8. Therefore, if this record has not been produced yet, the agency is ordered to produce it to plaintiff.

Phelps also checked the Investigations mail log, which "tracks incoming correspondence received in the OIG Investigations Division, but does not contain substantive information about the matters that are logged." Second Suppl. Howard Decl. ¶ 6; *see also* Suppl. Howard Decl. ¶ 11. She determined that the name "Heather White" did not appear on the log. Suppl. Howard Decl. ¶ 11. Phelps informed Howard that the Investigations Division did not start keeping a mail log until August 2003, and that prior to that time, the "mail was logged in a series of paper books," which Phelps stated she was "pretty sure have been destroyed by now." *See* Second Suppl. Howard Decl. ¶ 6; Suppl. Howard Decl. ¶¶ 11–12; Ex. 3 to Suppl. Howard Decl. [Dkt. # 25-3] ("Ex. 3").

**B.        The Renewed DOJ Search is Inadequate**

Putting aside the question of why the DOJ declarant wasted everyone's time the first time around by submitting a declaration that left more out than it included, the Court finds that the new declarations are still insufficient. While Howard clarified that she originally conducted searches using combinations of first names, middle names, and initials for "Christine Todd Whitman," "William A. Weinischke," "Heather White," and "Nikki L. Tinsley," *see* Suppl. Howard Decl. ¶¶ 5–8, and that she made efforts to follow up on those searches by seeking records from the Investigative Division, the fact that she used no search terms other than the names mentioned in the FOIA request renders the search incomplete.

As it observed in its previous opinion, the FOIA request "attached a copy of the White complaint, and from that complaint, Howard could have and should have identified additional search terms." *Pulliam*, 235 F. Supp. 3d at 194. The use of only the four names identified in plaintiff's request still "demonstrates that Howard did not understand the scope of plaintiff's

request, which sought all documents *relating* to the complaint filed by Heather White." *Id.* (emphasis in original).[12]

And while Howard attempts to explain why not searching "indexes of the OIG's audit and inspection records" was justified, her rationale is based on the flawed understanding of the scope of plaintiff's request. *See* Suppl. Howard Decl. ¶¶ 4, 12(13)[13] ("Because OIG audit and inspection records do not focus on the conduct of individuals, there is no reasonable possibility that those records will contain information regarding plaintiff's request."). As illustrated by the list of search terms used by EPA, terms exist that could have been used in a supplemental IDMS search and a search of the audit and inspection records.

The information provided about the mail log is also unsatisfactory. While the reasonableness of a search is not necessarily undermined due to the failure to locate responsive documents, *see Wilbur*, 355 F.3d at 678, a search is not adequate if the record "raises substantial doubt" that certain materials were overlooked. *See Valencia-Lucena*, 180 F.3d at 326, citing *Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

In her second supplemental declaration, Howard states that the OIG Investigations Division retention policy provides that records such as paper mails logs "are to be deleted/destroyed 5 years

---

12    The description of the search conducted by Phelps fails for the same reasons. After Howard searched IDMS, she contacted Phelps, who "conducted a search of all names referenced in [p]laintiff's request in the IDMS and no responsive records were located." *See* Suppl. Howard Decl. ¶ 11; *see also* Ex. 2 to Suppl. Howard Decl. [Dkt. # 25-3]. Even assuming that this conclusory description is referring to a search of the names "William A. Weinischke," "Christine Todd Whitman," "Heather White," and "Nikki L. Tinsley," those search terms leave much to be desired since responsive records could have been overlooked.

13    Howard's supplemental declaration contains two paragraphs both designated as ¶ 12, so the Court will refer to the first of those paragraphs as ¶ 12, and the second paragraph bearing that same number as ¶ 12(13).

after the end of the fiscal year during which the complaint was dispositioned or when the agency determines that they are no longer needed for administrative, legal, audit, or other operational purposes, whichever is later."  Second Suppl. Howard Decl. ¶ 8.  Based on that, she reported that that "OIG presumes the paper mail logs have been destroyed."  *Id.*

But this is entirely conclusory, and "generalized claims of destruction or non-preservation cannot sustain summary judgment."  *Valencia-Lucena*, 180 F.3d at 328.  Since the representative of the office involved was only "pretty sure" the paper mail logs had been destroyed, the agency should have made additional inquiries to determine whether the logs had in fact been destroyed.

As defendant concedes, all it has done is "reevaluate[]" its search "in response to the Court's February 16, 2017[] Opinion and Order."  Defs.' Renewed Mem. at 6.  But a reevaluation was not enough to cure all of the deficiencies in DOJ's searches.  Therefore, summary judgment is still inappropriate and the case will be remanded to the agency.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendants' renewed motion for summary judgment will be DENIED IN PART, plaintiff's motion will be DENIED as moot, and the Court will remand this case back to the agencies.  The agencies are instructed to conduct a further search for responsive records, to provide a more detailed justification for the adequacy of their searches, and to release any reasonably segregable non-exempt material to plaintiff consistent with FOIA.  The Court will grant plaintiff limited discovery as to the DOD's searches pursuant to Federal Rule of Civil Procedure 56(d) according to the terms set out in the attached order.  With respect to the documents EPA produced to plaintiff, the Court concludes that those documents were properly redacted under FOIA Exemption 6, and that EPA met its segregability requirement.

Thus, defendants' motion for summary judgment is GRANTED IN PART as to records EPA already produced to plaintiff.

A separate order will issue.

_Amy B Jackson_

AMY BERMAN JACKSON
United States District Judge

DATE: February 13, 2018